United States District Court
Southern District of Texas
**ENTERED**
April 21, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA LORRAINE SOLIS, <br> Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:19-CV-4865 |
| CITY OF BAYTOWN, TEXAS; <br> SAMUEL A. SERRETT; and <br> TEDDY F. SIMS, <br> Defendants. | § § § § § | |

# ORDER

Currently pending before the Court are four motions: (1) the Motion for Summary Judgment of the Defendants, Officer Samuel Serrett ("Serrett") and Officer Teddy Sims ("Sims") (collectively, the "Defendants") (Doc. No. 52), to which Plaintiff Jessica Lorraine Solis ("Solis") responded (Doc. No. 59) and the Defendants replied (Doc. No. 64); (2) Solis's Motion for Protective Order (Doc. No. 46), to which the Defendants have responded (Doc. No. 47) and Solis has replied (Doc. No. 49); (3) Solis's Motion to Enforce Subpoena (Doc. No. 48), to which the Defendants have responded (Doc. No. 56) and Solis has replied (Doc. No. 57); and (4) Solis's Amended Motion to Exclude Certain Opinions of the Defendants' Expert Witness Albert Rodriguez (Doc. No. 62), to which the Defendants have responded (Doc. No. 66) and Solis has replied (Doc. No. 68). In addition, the Defendants filed Objections to Solis's summary judgment evidence (Doc. No. 63), to which Solis responded (Doc. No. 67) and the Defendants replied (Doc. No. 69). This Order will address and resolve all of these motions and objections.

I. Factual Background[1]

Solis was riding in the car with her boyfriend, Timothy Robinson. Robinson was driving, but they were driving in Solis's car, apparently because Robinson's car was equipped with an interlock that required him to blow into a breathalyzer before he could drive it. (*See* Doc. No. 59, Ex. 4 at 27–28; Doc. No. 52, Ex. 4 at 44). The couple were returning home late at night after an outing to two Houston-Galleria-area restaurants and singing karaoke at a karaoke bar in the Katy area. (*See* Doc. No. 59, Ex. 4 at 11–16). Officer Serrett observed the vehicle and, after observing acts of unsafe driving, pulled it over. Once both had stopped, Serrett approached the passenger side of the vehicle where Solis sat in the passenger seat. Serrett suspected that Robinson, Solis, or both were intoxicated (*see* Doc. No. 52, Ex. 5 at 21), and called for another officer to respond as backup if needed. (*Id.*, Ex. 16 at 4). Serrett attempted to speak with Robinson, but was continually interrupted by Solis. Serrett eventually asked Robinson to exit the vehicle, which he did. At that point, Solis also exited the vehicle and began recording the encounter with her cellphone.

Contemporaneously, Officer Sims arrived on the scene. Solis was asked by the officers to stand on the grassy area next to the parking lot where the vehicle was located, which for the most part Solis did.[2] Serrett suspected Robinson of driving while intoxicated. (*See id.* at 6). He checked Robinson's driving record and found that Robinson was driving without a valid license. (*See id.*). He then directed Robinson to place his feet together. Robinson inquired whether Serrett was

---

[1] This background is compiled of mostly undisputed facts that come from the multiple recordings of the encounter that the Court has reviewed. *See* Scott v. Harris, 550 U.S. 372, 381 (2007) (when a video recording exists at summary judgment stage, Court may view facts "in the light depicted by the videotape"). These recordings are: Officer Serrett's body camera footage (Doc. No. 52, Ex. 2), the police dash camera footage (*Id.*, Ex. 3), footage from the security camera of the storage facility in front of which the encounter took place (*Id.*, Ex. 7), and Solis's cellphone footage (*Id.*, Ex. 8). Most of the pertinent events were captured by one or more of these cameras. Where a fact comes from another source, the Court will note it.

[2] The parking lot and grassy areas were adjacent to the storage facility where Solis and Robinson lived. Solis explained to Serrett that she managed the storage facility and that the couple lived together in an on-site apartment.

2

conducting a field sobriety test and Serrett responded that he was. Robinson replied, "I am not intoxicated." Serrett responded, "Alright, turn around and place your hands behind your back," and proceeded to place Robinson under arrest without incident.[3]

During this exchange, Solis was filming the encounter with her cellphone from the grassy area and Sims was standing between her and the location where Serrett and Robinson were conversing for most of the time. Solis and Sims spoke to each other about various topics while Serrett arrested Robinson. These topics included Solis claiming that she only gets pulled over when her "Black boyfriend" is driving and Solis complaining to Sims that Serrett had not given Robinson enough opportunity to submit to the field sobriety test before arresting him. To this Sims responded somewhat inaccurately that Serrett had given Robinson "multiple opportunities" to comply. Sims stated that he "wanted to say it for the camera" and complained that "a lot of times, when these videos go out, I mean, it's -- they cut all the story out." Solis responded that she had been filming the whole time and Sims replied that "we have too. I just want to give all the facts."

Serrett then walked over to where Solis and Sims were standing. He informed Sims that Robinson was driving with an "ineligible" license. At that point, Solis stopped filming, but continued holding her cellphone. Sims responded to Serrett, "Oh, that's why they were acting like that." Solis disagreed and stated that Robinson had a license, then asked for Serrett's badge number. Rather than give it, Serrett responded, "Yeah, can I see your phone for a second, please?" and reached his hand out in an apparent attempt to take Solis's cellphone from her hand. Solis jerked her phone away from his hand, took a step back, and replied, "No, you can't," and again asked for his badge number. Serrett then said, "Well, I don't want you to drop it when I arrest you,

---

[3] The Defendants argue in their motion that Robinson refused the field sobriety test. (*See* Doc. No. 52 at 14). It is arguable whether Robinson's statement claiming he was not intoxicated constituted a refusal to submit to the test, but this fact is not material to the resolution of the instant motions.

3

so could you please—." Solis responded while Serrett was still speaking, "Drop it? Excuse me?" and took another step back.

Before Serrett could finish his last sentence and while Solis was saying "Excuse me?" Sims quickly approached Solis and grabbed her left arm, twisting it around her back. Serrett then also reached for Solis and grabbed her other arm, at which point his body camera fell off his body. Either one or both of the officers forced Solis or the momentum from being restrained compelled her, but one way or another she ended up on the ground in the grassy area. Immediately thereafter, Sims placed his knee on Solis's back while Serrett handcuffed her. Serrett then proceeded to arrest Solis by placing her in the police vehicle with Robinson and taking both to jail. Solis was charged with public intoxication, but the charge was subsequently dismissed a few days later.

## II. Procedural History

Solis filed suit against Officers Serrett and Sims and against the City of Baytown (the "City"). She alleged many causes of action under 28 U.S.C. § 1983, including excessive force, unreasonable seizure due to an arrest without probable cause, malicious prosecution, violation of her First Amendment rights in the form of an arrest in retaliation for her filming the officers with her cellphone, and violation of her Fourteenth Amendment due process rights. (*See* Doc. No. 17). The City moved to dismiss the complaint, and the Court granted the motion, but gave Solis an opportunity to replead should she want to pursue possible liability under the so-called "single incident" doctrine. Despite that the Court had found that she had failed to adequately plead an official City policy or custom that was the "moving force" behind the alleged constitutional violation, Solis chose to forgo filing an amended complaint. Subsequently, the Court granted the City's motion for a judgment in its favor, (*see* Doc. No. 39), and severed the defendants so that only Solis's claims against the individual officers remained pending with this Court. Solis asked

4

the Court to reconsider this judgment after she conducted some discovery, but the Court denied this request. (*See* Doc. No. 55).

Now, the officers have moved for summary judgment based on qualified immunity. They argue that they had probable cause to arrest Solis, which would directly vitiate her Fourth Amendment unreasonable seizure claim. They also argue that the existence of probable cause means that, as a matter of law, the arrest could not have been in retaliation for Solis's exercise of her First Amendment right to record the officers. Further, they argue that they did not use excessive force when they effectuated the arrest of Solis.[4]

### III. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all

---

[4] The Defendants also argued that § 1983 does not provide a cause of action for malicious prosecution and that Solis's due process claims are not cognizable because they are all actually claims under the Fourth Amendment. Solis did not address these arguments in her response to the motion, so she has abandoned those claims. *Bedford v. Tex. Dep't of Transp.*, 810 Fed. Appx. 264, 268 (5th Cir. 2020) (finding no error where the district court concluded that the plaintiff had abandoned claims when he failed to respond to the defendant's motion for summary judgment on those claims); *Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 125–26 (5th Cir. 2017) (plaintiff abandoned claim where his summary judgment response did not contain any argument about it).

reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## IV. Analysis

### A. Evidentiary Objections

Before turning to the merits of the Defendants' summary judgment motion, the Court must resolve the evidentiary issues raised by the parties.

#### 1. The Plaintiff's Motion

Solis has objected to and moved to exclude certain opinions made in the report of the Defendants' expert Albert Rodriguez (Doc. No. 62). Her motion addressed both the report's admission at trial and its use to resolve the summary judgment motion. The Court hereby grants, at least in part, that motion. First of all, none of the report of Albert Rodriguez ("Rodriguez") will be admitted at trial, nor will any portion of any other expert report be admitted at trial unless both sides agree. By their nature, expert reports are inherently hearsay. They are written assertions by the declarant not made while testifying and offered for the truth of the matter asserted. Fed. R. Evid. 801. The purpose of an expert report is to inform the other side of the expert's background, what he or she has reviewed in reaching the opinions, his or her opinions, and the basis thereof. It is not a substitute for actual testimony, nor is there a specific hearsay exception for expert reports.

When one asserts objections, however, to an expert report, as opposed to actual testimony, the Court has little means or context to resolve whether or not certain testimony (which it has not

6

heard or read) is admissible.[5] The Court therefore sets out these general guidelines to help counsel for both sides plan for trial. Assuming proper objections are made by opposing counsel, no expert, including Rodriguez, will be allowed to speculate, guess, opine, or testify about *facts* based upon hearsay or "evidence" not presented to the jury. Again, assuming proper objections are made, no expert witness will be allowed to opine on areas outside of their expertise or testify concerning irrelevant topics. Finally, the Court will instruct the jury on the law and on the factors they should consider when they evaluate the evidence. It will not allow any witness—especially not one trained in the law—to do so; nor for that matter, will it allow any of the attorneys to do so.

The above paragraphs should be taken as general guidelines and not as a ruling on any specific topic other than the motion before the Court. Counsel, therefore, are still required to make the appropriate objections in a timely manner at trial.

Finally, the Court found no portion of Rodriguez's two reports to be pivotal or a determinative piece of evidence in ruling on the pending Motion for Summary Judgment. Therefore, the Amended Motion to Exclude is granted as to its admission at trial, but denied as moot as it pertains to these motions.

2.     **The Defendants' Objections**

The Defendants have also objected to all of Solis's summary judgment evidence. (Doc. No. 63). They argue first that the Court should not consider any of Solis's summary judgment evidence because Solis objected to and refused to answer the Defendants' interrogatories regarding Solis's basis to believe the Defendants' were not entitled to qualified immunity. (*See id.* at 2–3).

---

[5] The Court would point out an example. Plaintiff references in her reply brief the case of *Ibarra v. Harris Cnty.*, No. 4:04-CV-00186 (S.D. Tex. Mar. 2, 2005) and the order in that case concerning Rodriguez found at ECF No. 245-1. A review of that opinion clearly demonstrated that Judge Hoyt was reviewing testimony, not written reports.

Alternatively, the Defendants offer individualized arguments as to why the Court should not consider Solis's summary judgment evidence. (*See id.* at 3–10).

The Defendants' first argument can be easily disposed of because they did not file with this Court a motion to compel discovery after Solis objected to the interrogatories. Federal Rule of Civil Procedure 33 provides in part, "Each interrogatory must, *to the extent it is not objected to*, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). Parties are free to object to interrogatories rather than answer them. If the adverse party believes the objections to be meritless, the vehicle to ask the Court to rule on the propriety of such objections is a motion to compel. *See* Fed. R. Civ. P. 37. If the Defendants were truly concerned about Solis's purported failure to comply with discovery, they should have used the tool specifically provided for in the Federal Rules rather than wait to raise the issue now. The objection to Solis's summary judgment evidence based on her failure to answer interrogatories is overruled. The Court will now turn to the individualized objections.

### a. Exhibits A, B, and C

Plaintiff's Exhibit A is a letter from the City of Baytown to Solis informing her that her public intoxication charge had been dismissed. (*See* Doc. No. 59, Ex. 1). Plaintiff's Exhibit B is an email from an open records specialist for the Baytown Police Department informing Solis's lawyers that Officer Sims's body camera was not activated during the encounter, and stating that the Police Department had determined that Sims did not violate any policy by not activating the body camera. (*See id.*, Ex. 2). Plaintiff's Exhibit C is the internal Baytown Police procedures for arrests, prisoner transport, and escape. (*See id.*, Ex. 3). The Defendants object to all of these Exhibits on relevance grounds. They argue that none of these Exhibits are relevant to the issues of whether there was probable cause or whether the officers should be entitled to qualified immunity.

The Court need not resolve these objections. The Court will apply the proper legal standards to the substantive questions involved in the summary judgment motion and will consider only evidence relevant to that analysis. The Defendants may of course raise the relevancy objections should the Exhibits be offered again at trial.

### b. Exhibit D

Plaintiff's Exhibit D is Solis's deposition. (*See* Doc. No. 59, Ex. 4). The Defendants object to the deposition for various reasons, none of which are persuasive because the Defendants also rely on Solis's deposition is their motion for summary judgment. (*See* Doc. No. 52, Ex. 1). The only difference is that the Defendants provided an abridged version to help focus the Court on the statements on which they relied in their motion, and the Plaintiff provided the entire deposition. The deposition is properly before the Court and it may rely on it to rule on the summary judgment motion should it choose.

Nevertheless, the Plaintiff is cautioned that the burden is not on the Court to search the record to try to identify a fact issue. It is the burden of the non-movant to identify specific facts that raise a genuine dispute and point out where those facts are to be found in the record. The Fifth Circuit has made clear that "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment, especially where, as here, the nonmoving party is well aware of the existence of such evidence. Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Skotak v. Tenneco Resins, Inc.*, F.2d 909, 915 n.7 (5th Cir.) 1992); *see also Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record to articulate the precise manner in which that evidence supports his or her claim.");

9

*Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988). The Defendants' objection to Plaintiff's Exhibit D is overruled.

**B.  Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has prescribed a two-step process for courts to determine whether an officer is entitled to qualified immunity. *See id.* First, the court should determine if the facts show a violation of a constitutional right. *Id.* If so, the court must decide "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* "At summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith." *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

The Court must resolve the following issues to determine whether the officers are entitled to qualified immunity from Solis's claims: (1) whether the officers had probable cause to arrest Solis; (2) if so, whether that probable cause means as a matter of law that Solis's First Amendment claim fails; and (3) whether the officers used excessive force in effectuating the arrest in violation of the Fourth Amendment. In addition, if the Court finds that any of the officers' actions did constitute constitutional violations, the Court must determine whether the law establishing such was "clearly established" at the time of the violation.

**1.  Was there probable cause to arrest Solis?**

The Defendants argue that there was no constitutional violation when they arrested Solis because there was probable cause to arrest her. Therefore, there was no unreasonable seizure that

10

would violate the Fourth Amendment and the arrest cannot be considered retaliatory in violation of the First Amendment. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

It is indisputable that an arrest constitutes a "seizure" within the meaning of the Fourth Amendment, *see Terry v. Ohio*, 392 U.S. 1, 16 (1968), and therefore must have been supported by probable cause to pass constitutional muster. *See D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) ("A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence.").

Probable cause is difficult to define precisely "because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Nevertheless, "the substance of all the definitions of probable cause is a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be . . . seized." *Id.* (cleaned up). "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). Probable cause is a wholly objective standard, viewed from the perspective of a reasonable officer, so an arresting officer's subjective motivation in making the arrest is irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The Defendants charged Solis with public intoxication. Nevertheless, "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any

11

offense, not just the offense cited at the time of arrest or booking." *Wesby*, 138 S. Ct. at 584 n.2. The Defendants point to various provisions in the Texas Transportation Code that they claim supported an arrest of Solis. First, Texas Transportation Code § 521.458 states that a person "may not authorize or knowingly permit a motor vehicle owned by or under the control of the person to be operated on a highway by any person in violation of this chapter."[6] Tex. Trans. Code. § 521.458(b). Further, § 521.457 prohibits a person from driving a car if that person's driver's license has been suspended or revoked. Tex. Trans. Code. § 521.457. In addition, § 542.302 provides that a "person who owns a vehicle or employs or otherwise directs the operator of a vehicle commits an offense if the person requires or knowingly permits the operator of the vehicle to operate the vehicle in a manner that violates law." Tex. Trans. Code § 542.302.

Solis responds first that the Supreme Court should reconsider its precedent that officers do not need to have probable cause for the charged offense in order for the arrest to be valid and that subjective intent is irrelevant. Nonetheless, Solis recognizes, as she must, that this Court is bound by that precedent. Solis also responds that the summary judgment evidence does not establish that Solis was aware that Robinson was driving in a way that would violate traffic laws or that she knew that Robinson did not have an eligible driver's license.

It may very well be true that Solis was unaware of those facts—she testified at her deposition that she was not paying attention to the way Robinson was driving, (Doc. No. 59, Ex. 4 at 24–25, 34) and that she was not aware that Robinson's driver's license was invalid (*Id.* at 27). If the question before the Court was whether Solis knowingly allowed Robinson to drive her car illegally, then there would likely be a disputed issue of fact. That, however, is not the question.

---

[6] The subchapter only provides that a person "may not" do the prohibited activity, but does not provide a penalty for doing so. Section 521.461 provides a "general criminal penalty" that an offense not provided for specifically is a "misdemeanor punishable by a fine not to exceed $200." Tex. Trans. Code. § 521.461.

Instead, the Court only must determine whether the facts and circumstances facing the Defendants at the time of the arrest were sufficient to cause a reasonable person to conclude that Solis knew Robinson was not eligible to drive her car and allowed him to do so anyway, or that Solis knowingly permitted Robinson to drive her car in an unsafe manner.

Solis had told the officers multiple times that the car was hers rather than Robinson's and that Robinson was her boyfriend. She also mentioned to the officers that they had been pulled over together multiple times in the past, which could indicate to a reasonable officer the couple had been together a long time. Further, Solis told the officers she and Robinson lived together at the storage facility on-site apartment. After discovering that Robinson was not eligible to drive, it was reasonable for the officers to conclude that Solis knew this about her own long-term, live-in boyfriend. In addition, it was reasonable for the officers to assume that Solis had been aware and permitted Robinson to drive unsafely since she was in the car with him. Therefore, the officers had probable cause to believe that Solis knowingly permitted Robinson to drive her car even though him doing so was itself a violation, in violation of Tex. Trans. Code. § 521.458(b). There was also probable cause for the officers to believe that Solis had permitted Robinson to operate the vehicle unsafely in violation of Tex. Trans. Code § 542.302. The Defendants' arrest of Solis did not constitute an unreasonable seizure in violation of the Fourth Amendment, so they are entitled to qualified immunity on that claim.

### 2. Was the arrest retaliatory?

The Defendants contend that, because the arrest of Solis was supported by probable cause, it cannot have been retaliatory as a matter of law. On this point, the Defendants are correct. The Supreme Court clarified this area of the law as recently as 2019 in *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019). There, the Court stated explicitly that the "plaintiff pressing a retaliatory arrest claim

must plead and prove the absence of probable cause for the arrest."[7] *Id.* at 1724. "Because there was probable cause to arrest [Solis], [her] retaliatory arrest claim fails as a matter of law." *Id.* at 1728. Summary judgment as to the First Amendment claim is granted.

### 3. Did the Defendants use excessive force?

Last, the Defendants argue that Solis was not subjected to excessive force. "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017). Whether the use of force was reasonable is a highly fact-intensive inquiry, which requires careful consideration of the circumstances and particularities of the case, including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Defendants argue first that Solis lacks any evidence that she sustained an injury from their use of force, which would be fatal to her excessive force claim. The Fifth Circuit does not require "significant injury" for excessive force claims, but does require that the injury be more than *de minimis*. *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005). For example, the Fifth Circuit has found merely *de minimis* injury when the plaintiff complains only of handcuffs being applied too tightly. *See id.*; *Glenn*, 242 F.3d at 314. The Defendants argue that "the record is barren of evidence which shows that Solis sustained *any injury* from application of the handcuffs to her

---

[7] An exception to this rule applies "when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 135 S. Ct at 1727. Solis has not provided any evidence that Baytown officers do not usually arrest people for permitting others to drive their cars unsafely or knowingly allowing someone with an ineligible driver's license or to drive their cars, so this exception does not apply.

14

wrists so she cannot satisfy the injury prong of the test." (Doc. No. 52 at 22–23). This argument ignores, however, that Solis is not complaining of the application of the handcuffs, but is instead complaining of being injured in the takedown. Further, in her deposition, Solis testified that her back and wrists were injured and that it "feels like a nerve thing." (Doc. No. 59, Ex. 4 at 57). This is enough to at least raise a fact issue as to Solis's injury.

The first prong of the reasonableness inquiry is the severity of the crime at issue. The violations of the Transportation Code discussed above are misdemeanors punishable at-most with a fine. *See* Tex. Trans. Code §§ 521.461, 542.301. In addition, the crime of public intoxication with which Solis was eventually charged is a Class C misdemeanor. *See* Tex. Pen. Code § 49.02. Any of the crimes for which Solis may have been arrested, therefore, are "minor offense[s] militating against the use of force." *Trammel*, 868 F.3d at 340.

Next, the Defendants do not argue that Solis posed an immediate threat to the safety of the officers or others; nor could they, seeing as the videos of the encounter show that Solis was not physically threatening the officers in any way. The Defendants instead argue that Solis's claim fails the last prong of the analysis—whether she was actively resisting arrest or attempting to evade arrest by flight. *See Graham*, 490 U.S. at 396. They argue that their use of force to arrest Solis was an objectively reasonable response to Solis's "non-compliance with reasonable commands and [her] physical resistance to arrest." (Doc. No. 52 at 22). In support of this contention, the Defendants offer the testimony of the officers. Officer Serrett's declaration states in relevant part:

> I first asked Solis to voluntarily submit to arrest, but Solis' words and deeds clearly demonstrated that she would not willingly submit to arrest, and that she had taken the physical action of moving away from officers. I had no reason to believe Solis was likely to stop resisting arrest if we allowed her to move further away from officers. Solis' statements and action required me and Officer Sims to change from asking for voluntary compliance to using some level of force to arrest Solis.

(Doc. No. 52, Ex. 16 at 8). Officer Sims's declaration states in relevant part:

15

> Officer Serrett attempted to gain Solis' compliance with handcuffing by using verbal requests. When his verbal requests were ineffective, Solis' refusal to submit to arrest required us to apply the force needed to arrest Solis and minimize injury to Solis and officers.

(*Id.*, Ex. 17 at 3).

These accounts, however, are not necessarily supported by all the video evidence, and are certainly contrary to Solis's testimony recalling the events. At the moment that Officer Serrett asked Solis for her cellphone, Solis was arguably justified in declining to give it to him. *See, e.g.*, *United States v. Walker*, 706 Fed. Appx. 152, 156 (5th Cir. 2017) (consent to search must be given "freely and voluntarily"). Neither officer gave any indication to Solis that turning over the cellphone was connected to an imminent arrest. In addition, Solis jerking her arm away and taking a step back from Serrett could reasonably be interpreted as an effort to keep her cellphone away from him, not an attempt to resist arrest, especially given that at that time no one had told her she was under arrest. Her initial refusal to consent to Serrett taking her cellphone would not have indicated to a reasonable officer that she would also resist arrest. On such facts, the Court cannot find as a matter of law that a reasonable officer would have believed that Solis was resisting arrest.

Further, even if the Court concluded that Solis's behavior could be characterized as some degree of resistance that would justify use of force, "the quickness with which the officers resorted to tackling [Solis] to the ground militates against a finding of reasonableness." *Trammel*, 868 F.3d at 342. The Fifth Circuit "has several times found that the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need." *Id.* (citing *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009)). In *Trammel*, the Fifth Circuit found that three seconds elapsing between a request by the officers for the suspect to place his hands behind his back before resorting to force "did not constitute the required 'measured and ascending' actions calibrated to [the suspect]'s conduct." *Id.*

16

Here, the officers did not even make any such request that Solis place her hands behind her back, and instead gave Solis little chance to submit to being arrested before initiating the takedown. The Defendants used no "negotiation before resorting to physical violence." *Id.* Accordingly, the Court finds that a reasonable jury could find that the circumstances of Solis's arrest did not justify the Defendants' decision to suddenly and without warning twist Solis's arms behind her back, ultimately resulting in her being taken to the ground. Thus, Solis has properly presented facts establishing issues of material fact concerning a violation of her constitutional right to be free from excessive force against Officers Serrett and Sims.

The Court now turns to whether the law at the time of Solis's arrest was clearly established. *See Trammel*, 868 F.3d at 343. It was. As discussed above, the Fifth Circuit's opinion in *Trammel* outlines a scenario very similar to this case. That case was published in 2017, two years before the encounter underlying this case. Further, the court in *Trammel* found that it was already "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.* The court in *Trammel* further cited to two earlier Fifth Circuit opinions that had similar holdings. In *Newman*, the court held that there were material disputes of fact as to whether the defendant-officers' use of force was justified when they "immediately resorted to [force] without attempting to use physical skill, negotiation, or even commands." 703 F.3d at 763. In *Deville*, the court determined that summary judgment was not warranted because, "[t]aking the facts in the light most favorable to plaintiffs, a jury could reasonably find that the degree of force the officers used in this case was not justifiable under the circumstances. A reasonable jury could infer from [the plaintiff's] deposition testimony that [the defendant] engaged in very little, if any, negotiation with her—and find that he instead quickly resorted to [force]." 567 F.3d at 168–69.

Accordingly, the Court holds that the officers had "fair warning" that their conduct could be unconstitutional. *See Newman*, 703 F.3d at 763.

For the foregoing reasons, the Court holds that the Defendants' motion for summary judgment is granted as to all of the Plaintiff's claims, with the exception of her excessive force claim. There is a material dispute of fact as to whether the force used by the officers was justified in light of all the facts and circumstances.

### C. Other Motions

Solis has also moved to enforce a subpoena and for a protective order (Doc. Nos. 46 & 48). The Defendants' opposition to these motions is that the discovery requested therein goes beyond the question of qualified immunity and was therefore inappropriate before the resolution of qualified immunity. Having now decided that there are material disputes of fact precluding qualified immunity at the summary judgment stage as to the excessive force claim, the Court grants both of Solis's discovery motions, subject to the entry of a protective order to which both parties must agree. Plaintiff's counsel shall provide a draft to defense counsel for their approval.

### V. Conclusion

For the foregoing reasons, the Court hereby grants in-part and denies in-part the Defendants' Motion for Summary Judgment (Doc. No. 52), grants Solis's Motion for Protective Order (Doc. No. 46), grants Solis's Motion to Enforce Subpoena (Doc. No. 48), and grants in-part and denies in-part as moot Solis's Motion to Exclude (Doc. No. 53).

SIGNED at Houston, Texas this 21st day of April, 2021.

Andrew S. Hanen
United States District Judge